Sid Leach (#019519)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6372
Facsimile: (602) 382-6070
Email: sleach@swlaw.com
Attorneys for Plaintiff I.C. Medical, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| I.C. Medical, Inc., an Arizona corporation,<br><br>*Plaintiff*,<br><br>*vs.*<br><br>Conmed Corporation., a New York corporation,<br><br>*Defendant*. | No. 2:09-cv-2124-PHX<br><br>**COMPLAINT FOR PATENT INFRINGEMENT, UNFAIR COMPETITION AND TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY** |

Plaintiff I.C. Medical, Inc. ("I.C. Medical"), by and for its complaint against Defendant Conmed Corporation ("Conmed"), alleges as follows:

**THE PARTIES**

1. Plaintiff I.C. Medical is an Arizona corporation engaged in the manufacture and sale of electrosurgery equipment and disposables with its principal place of business in Phoenix, Arizona.

2. Conmed is a New York corporation with its principal place of business in Utica, New York. Conmed is engaged in the manufacture and sale of the GOLDVAC smoke evacuation pencil which is an integrated electrosurgical pencil and smoke

10377881

evacuation handpiece, as well as other electrosurgical apparatus and disposables. Conmed has offered for sale and sold its GOLDVAC product in Arizona and elsewhere.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the patent infringement claim by virtue of 28 U.S.C. §1338(a). In addition, jurisdiction over the patent infringement claim is provided under 28 U.S.C. §1331. This Court has diversity jurisdiction over all claims asserted in this action pursuant to 28 U.S.C. §1332, because the parties are citizens of different states and the amount in controversy exceeds the jurisdictional amount of $75,000, excluding interest and costs. This Court has original jurisdiction over the unfair competition claim based upon 28 U.S.C. §1338(b). This Court has supplemental jurisdiction over the unfair competition claim and interference with business expectancies claim by virtue of 28 U.S.C. §1367.

4. Venue is proper in this Court under 28 U.S.C. §1391(b), because Defendant has committed acts of patent infringement in, and has regularly conducted or conducts business within, Arizona. Defendant is deemed to reside in this judicial district within the meaning of 28 U.S.C. §1391(c).

## GENERAL ALLEGATIONS

5. Ioan Cosmescu, President of I.C. Medical, came to the United States in 1983 as an immigrant from Romania, where he was trained and educated as a biophysicist. Mr. Cosmescu holds the equivalent of a Ph.D. in Electroenergetic & Automation Technical Engineering, which he obtained from the Technical College of Electroenergetic in Romania. With little knowledge of the English language, Mr. Cosmescu managed to support himself and his wife and son by working in the Biomedical Engineering Department of St. Joseph's Hospital in Phoenix, Arizona, troubleshooting medical equipment failure.

10377881

6.   In 1988, with money he had saved working as a medical equipment technician, Mr. Cosmescu founded I.C. Medical. I.C. Medical is an innovator in the design and manufacture of electrosurgery equipment, disposables related to electrosurgical equipment, and various other products for the medical profession. I.C. Medical is now widely recognized in the medical profession as a source of high quality and innovative electrosurgery equipment. Mr. Cosmescu is the inventor of at least twenty issued U.S. patents and several foreign patents relating to electrosurgery and laser surgery equipment.

7.   I.C. Medical developed an integrated telescopic smoke evacuation electrosurgical pencil and began manufacturing its integrated telescopic smoke evacuation electrosurgical pencil in 1999.

8.   Plaintiff filed several U.S. patent applications to protect its investment and development of its integrated telescopic smoke evacuation electrosurgical pencil. Plaintiff subsequently obtained several United States patents and foreign patents relating to Plaintiff's telescoping electrosurgical pencils.

9.   In or around May 2008, Plaintiff I.C. Medical was informed that Conmed may be considering the manufacture or sale of telescoping electrosurgical pencils in the United States or Canada. On June 6, 2008, counsel for I.C. Medical sent a letter to Daniel Jonas, General Counsel for Conmed, advising Conmed of I.C. Medical's issued U.S. patents relating to telescoping electrosurgical pencils. A copy of this letter is attached hereto as Exhibit "A."

10.   In March 2009, Plaintiff I.C. Medical attended a conference put on by the Association of Operating Room Nurses (AORN) in Chicago, Illinois. At that conference, Plaintiff I.C. Medical observed Conmed introducing a telescoping electrosurgical pencil. A later examination of a sample Conmed product indicated that the Conmed product,

designed the GOLDVAC smoke evacuation pencil, infringes one or more of Plaintiff's patents.

11. Conmed is a competitor of I.C. Medical. Conmed is currently advertising its GOLDVAC smoke evacuation pencil on its website at www.conmed.com. Conmed's GOLDVAC smoke evacuation pencil is a telescoping smoke evacuation pencil.

12. Conmed is a much larger company than I.C. Medical, and its financial resources greatly exceed those of I.C. Medical. The only way that I.C. Medical can effectively compete against large competitors like Conmed is on the basis of its innovative products and patented designs.

13. This is not the first time that Plaintiff has been forced to enforce its patent rights against Conmed. Beginning in 1988, I.C. Medical developed an automatic smoke evacuator system for use with electrosurgery and laser surgery apparatus.

14. Plaintiff's automatic smoke evacuator system fulfilled a need in medical procedures involving electrosurgical and laser surgery that use high frequency energy or laser to burn the tissue, because surgical smoke is liberated during thermal destruction of human tissue. Plaintiff's automatic smoke evacuator system removed surgical smoke by suctioning the smoke away from the surgical site and filtering particulates from the smoke, thereby avoiding potential adverse health effects of such smoke (chemical carcinogens, toxins and irritants may be present in surgical smoke, and viruses including HPV and HIV have been cultured from surgical smoke).

15. I.C. Medical's patented automatic smoke evacuator system was a commercial success, and was sold throughout the U.S. under the trademark CLEARVIEW. In 2006, I.C. Medical notified Conmed that Conmed's CLEARVAC shroud infringed one or more of I.C. Medical's patents. After attempts to negotiate a license agreement with Conmed failed, I.C. Medical filed a patent infringement lawsuit, Case No: CV 07-1469-PHX-JAT, in the United States District Court for the District of

Arizona in July 2007. That lawsuit was later settled, and the parties entered into a settlement and license agreement.

16.   In addition to the specific notice of Plaintiff's patents provided in the letter that was sent to Conmed, dated June 6, 2008, Conmed was already aware of I.C. Medical and its patents, including U.S. Patent Nos. 5,693,044 and 6,702,812, prior to Conmed's design of the GOLDVAC product accused of infringement in this case.

## COUNT ONE
### (Patent Infringement)

17.   Plaintiff incorporates by reference all of the averments of paragraphs 1 through 16.

18.   United States Letters Patent No. 5,693,044, duly and legally issued to Mr. Cosmescu on December 2, 1997. United States Letters Patent No. 6,702,812 duly and legally issued to Mr. Cosmescu on March 9, 2004.  True and correct copies of those two patents are attached as Exhibits "B" and "C" and are incorporated herein by reference. Mr. Cosmescu assigned those two patents to Plaintiff I.C. Medical, Inc., together with the right to sue and collect for past infringement.

19.   I.C. Medical is the owner of all right, title and interest in and to the inventions covered by United States Letters Patent Nos. 5,693,044 and 6,702,812.

20.   Conmed's GOLDVAC smoke evacuation pencil infringes one or both of I.C. Medical's U.S. Patent No. 5,693,044 and U.S. Patent No. 6,702,812 (hereinafter referred to collectively as the "I.C. Medical Patents").

21.   Conmed has been, and is presently, directly infringing either literally or under the doctrine of equivalents one or both of the I.C. Medical Patents by making, using or selling products and/or performing patented methods, without license or consent of I.C. Medical or Mr. Cosmescu.

22. Upon information and belief, Conmed has been, and is presently, engaging in contributory infringement of one or more of the claims of the I.C. Medical Patents by knowingly making and selling products that are specially made or specially adapted for use in infringement of the I.C. Medical Patents, which products are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

23. Upon information and belief, Conmed has been, and is presently, actively inducing infringement of one or more of the I.C. Medical Patents.

24. Upon information and belief, Conmed's actions have been, and are, with knowledge of the I.C. Medical Patents and have been and are in willful disregard of those rights. On information and belief, Conmed has willfully infringed the I.C. Medical Patents.

25. As a direct and proximate consequence of Conmed's actions, I.C. Medical has been damaged in an amount to be determined at trial. I.C. Medical will continue to suffer irreparable injury unless and until Conmed is preliminarily and permanently enjoined from infringing the I.C. Medical Patents.

## COUNT TWO
### (Unfair Competition)

26. Plaintiff incorporates by reference all of the averments of paragraphs 1 through 25.

27. Conmed is a much larger company than I.C. Medical, and its dollars in sales and number of employees far exceed those of I.C. Medical.

28. Conmed uses its size and market power to obtain agreements from Group Purchasing Organizations (GPOs) that represent a number of hospitals and clinics in purchasing their equipment needs. Conmed uses its size and market power to extract agreements from GPOs to purchase a certain percentage of their product requirements from Conmed. With such agreements in place, it is difficult for a company the size of I.C.

Medical, with a much smaller product line, to sell its products to GPO members, even by lowering the price of Plaintiff's products.

29. I.C. Medical therefore depends upon the innovative nature of its products and designs to open the doors to hospitals and clinics represented by GPO's. I.C. Medical's superior technology is the life blood of the company. When Conmed copies Plaintiff's patent designs, it not only infringes Plaintiff's patent rights, but it also excludes Plaintiff from competing for business with GPOs. As a result, Plaintiff loses not only sales of the patented products, but additional sales of other products and services are lost that would be available if I.C. Medical was able to get in the door with GPOs on the basis of its innovative patented products.

30. One of the products currently offered for sale by Conmed to GPOs is Conmed's infringing GOLDVAC telescoping smoke evacuation pencil which, as stated above, infringes the I.C. Medical Patents.

31. On information and belief, Conmed is able to and has engaged in predatory pricing, by selling its infringing GOLDVAC product to GPOs as a loss leader in order to exclude I.C. Medical as a competitor. By using unfair competitive practices to prevent I.C. Medical from selling to GPOs, Conmed is able to reap profits from sales of both patented and non-patented products and services since Plaintiff is effectively excluded from the competitive playing field. But for Conmed's infringing conduct, I.C. Medical would be able to sell its patented products, as well as other products and services, to the GPO members.

32. Conmed has intentionally acted in a predatory and unfair manner against Plaintiff as part of a scheme to competitively harm I.C. Medical; and Conmed's actions constitute unfair competition.

33. As a direct consequence of Conmed's actions, I.C. Medical has suffered irreparable injury to its reputation and substantial loss of goodwill, lost sales of both

patented and unpatented products and services, and sustained other damages in amounts which at this time are not fully ascertainable, and such injury will continue and increase unless Conmed is preliminarily and permanently enjoined from its unlawful conduct.

34.  Upon information and belief, Conmed has committed these acts of unfair competition with an evil mind guided by an evil hand, in that Conmed intended to cause injury to Plaintiff, and/or Conmed's wrongful conduct was motivated by spite or ill will, and/or Conmed consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff or others.

## COUNT THREE
### (Tortious Interference with Business Expectancy)

35.  Plaintiff incorporates by reference all of the averments of paragraphs 1 through 34.

36.  Plaintiff has business relationships and business expectancies with hospitals and clinics and GPOs.

37.  Conmed has knowledge of Plaintiff's business relationships and business expectancies with hospitals and clinics and GPOs.

38.  Upon information and belief, Conmed has interfered with and continues to interfere with Plaintiff's business relationships and business expectancies with hospitals and clinics and GPOs.

39.  Conmed's interference with Plaintiff's business relationships and business expectancies is neither proper or privileged.

40.  As a direct consequence of Conmed's actions, I.C. Medical has suffered irreparable injury in being unable to establish and maintain business relationships with GPOs and hospitals and clinics. In addition, I.C. Medical has lost sales of both patented and unpatented products and services, and sustained other damages in amounts which at

this time are not fully ascertainable, and such injury will continue and increase unless Conmed is preliminarily and permanently enjoined from its unlawful conduct.

41. Upon information and belief, Conmed has interfered with Plaintiff's business relationships and business expectancies with an evil mind guided by an evil hand, in that Conmed intended to cause injury to Plaintiff, and/or Conmed's wrongful conduct was motivated by spite or ill will, and/or Conmed consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff or others.

## **PRAYER FOR RELIEF**

WHEREFORE, I.C. Medical prays for judgment against Conmed as follows:

A. That this Court grant and enter a judgment declaring that the I.C. Medical Patents are valid and enforceable against Conmed;

B. That this Court preliminarily enjoin pending trial, and permanently enjoin after trial, Conmed, its officers, agents, servants, employees, successors-in-interest, subsidiaries, and all persons acting under, in concert with, or for it, from directly or indirectly making or causing to be made, using or causing to be used, selling or causing to be sold, offering for sale or causing to be offered for sale, or importing or causing to be imported the GOLDVAC smoke evacuation pencil, or any other smoke evacuation pencil that infringes one or more claims of the I.C. Medical Patents, or otherwise directly or indirectly infringes, contributorily infringes or induces infringement of the I.C. Medical Patents;

C. That this Court require Conmed, its officers, agents, servants and employees to recall and destroy all products infringing, directly or otherwise, one or more claims of the I.C. Medical Patents;

D. That this Court direct Conmed to file with this Court and serve on Plaintiff I.C. Medical within twenty (20) days after service of an injunction a report in writing,

under oath, setting forth in detail the manner and form in which Conmed has complied with each injunction that may be granted in favor of I.C. Medical;

E. That this Court enter judgment against Conmed and in favor of I.C. Medical for damages adequate to compensate for Conmed's patent infringement;

F. That this Court order that damages awarded to I.C. Medical be trebled in view of Conmed's willful infringement pursuant to 35 U.S.C. § 284;

G. That this Court determine that this is an exceptional case pursuant to 35 U.S.C. § 285 and award I.C. Medical its reasonable attorneys fees;

H. That this Court enter judgment against Conmed and in favor of I.C. Medical for all damages caused by Conmed's unfair competition and tortious interference with business expectancies;

I. That this Court enter judgment against Conmed and in favor of I.C. Medical for punitive damages;

J. That I.C. Medical be awarded its costs of this action;

K. That I.C. Medical be awarded prejudgment and post-judgment interest on its foregoing damages, fees and costs at the highest rate allowable at law until paid in full; and

L. That I.C. Medical be awarded such other and further relief to which Plaintiff is entitled, even if Plaintiff has not demanded that relief in its pleadings.

DATED this 8th day of October, 2009.

SNELL & WILMER L.L.P.


By s/Sid Leach
Sid Leach
One Arizona Center
400 East Van Buren Street
Phoenix, Arizona 85004-2202
Attorneys for Plaintiff I.C. Medical, Inc.

10377881